**E-FILED on** 9/30/2010

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MATT MALEK MADISON,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>FONAR CORPORATION, a Delaware Corporation,<br><br>　　　　　Defendant. | No. C-07-04211 RMW<br><br>FINDINGS OF FACT AND CONCLUSIONS OF LAW |

　　　This matter was tried before the court beginning on August 25, 2009 and concluding on August 26, 2009 subject to post-trial briefing. Plaintiff, Matt Malek Madison[1] ("Madison"), brought the action against FONAR Corporation ("FONAR") for breach of contract, money had and received, and promise without intent to perform. Madison's claims are predicated on the alleged failure of FONAR to return a $300,000 refundable deposit he made on four Magnetic Resonance Imaging ("MRI") machines to be built and installed by FONAR. FONAR counter-claimed for breach of

---

[1] Plaintiff uses several names including the first name "Nemat" and "Matt" and the last names "Madison," "Malek" and "Maleksalehi."

FINDINGS OF FACT AND CONCLUSIONS OF LAW
C-07-04211

1  contract and breach of the implied covenant of good faith and fair dealing.  FONAR's claims are
2  based upon Madison's failure to complete the purchase of the MRI systems.  Madison was
3  represented by his counsel, Barry Sabahat, and FONAR was represented by its counsel Laurence
4  Shiff, who appeared *pro hac vice,* and its local counsel, John F. McIntyre, Jr.  The court has
5  considered the evidence admitted, reviewed both the pre-trial the post-trial briefing and now issues
6  its Findings of Fact and Conclusions of Law.

## I. Findings of Fact

1. In December, 2004, FONAR, a manufacturer of stand-up Magnetic Resonance Imaging ("MRI") machines, was introduced to Madison, a real estate investor, who was considering purchasing an MRI machine to be installed in the Bay Area. Prior to April 2005, at Madison's request, FONAR sent two quotations to Madison, neither of which was accepted by him. From approximately April to June 2005, the parties discussed and negotiated the terms of an agreement for the purchase of FONAR MRI machines. Allan Mercer, FONAR's senior executive of sales and marketing, was FONAR's primary contact with Madison.

2. In or about June 2005, Mercer informed Madison that the price on the MRI machine was increasing by $50,000 but that if Madison got his order in before June 30, 2005, the close of FONAR's fiscal year, he would get the benefit of the old price of $1.5 million per machine. Mercer was anxious as the sales manager to have the sales before the end of the fiscal year both for his benefit and that of the company.

3. Madison was interested in the MRI equipment but wanted a lower deposit requirement than FONAR normally required.  At the same time, Madison wanted to ensure that if he did not find appropriate locations to place the equipment, he could get his deposit back. Madison was looking for investors or partners at the time that he and FONAR were negotiating their deal and, although he did not say so, appears to have wanted an "out" if he could not find investors.

4. On June 16, 2005, FONAR issued a third quotation for four (4) MRI machines, which included, as its last page, the "Terms of Sale," setting forth the price of $1.5 million for each machine, providing for a deposit of $75,000 on each machine (as compared with the

FINDINGS OF FACT AND CONCLUSIONS OF LAW
C-07-04211
2

United States District Court
For the Northern District of California

standard deposit of $300,000 for each machine FONAR usually required) and including the following provision for a refund:

> This sale for Systems I, II, III and IV is contingent on the location of four (4) FONAR approved sites within a year of the date of the initial good faith deposit. If customer does not obtain approved site location for each System the 5% good faith deposit for said System is to be returned by FONAR.

Ex. 1. FONAR was willing to agree to the lower per system deposit, since Madison was agreeing to buy four machines and because FONAR was anxious to make the deal to improve the appearance of its financial condition and to get funds.

  5. Mercer testified that in his discussions with Madison prior to Madison's executing the Terms of Sale, Madison anticipated he could find sites for the MRI machines within 60-90 days. However, they agreed that Madison could have up to a year to find sites and present them to FONAR for approval.

> Q. You had a conversation you just told us there was some discussion with refundability if FONAR doesn't approve sites; is that correct?
>
> A. That's correct.
>
> Q. What was that discussion?
>
> A. Well, the discussion was that for some reason if he was not able to find sites within that 12-month time frame he would get a refund.

Tr. 235:12-19.

  6. The written terms of FONAR's offer did not include any reference to the 60 to 90 days that Madison indicated it would take him to find suitable locations. The proposal did provide, however, that if approved site locations were not obtained within one year of Madison's deposit, the deposit "is to be returned by FONAR." The offer did not condition the refund on any request by Madison.

  7. Raymond Damadian, M.D., Chairman and President of FONAR, testified that he only had one conversation with Madison and that was a telephone conference on June 15, 2005 in which Mercer and Madison participated. The primary topic was pricing, including the amount of deposit required and refundability of the deposit if Madison was unable to get sites approved by FONAR within one year. Dr. Damadian did not recall Madison saying anything about his needing a 60-90

FINDINGS OF FACT AND CONCLUSIONS OF LAW
C-07-04211

3

day period to find locations. Dr. Damadian did say that he and Madison discussed that if Madison did not receive approval from FONAR of proposed sites within the one year period, he would have to ask for a refund within that period. The testimony about Madison's having to ask for a refund within a year, however, appeared to be the result of Dr. Damadian's self-serving, litigation motivated construction of the language in Madison's June 29, 2005 "subject to" acceptance of FONAR's June 16 offer. Dr. Damadian's actual memory of the details of the June 15 telephone conversation was minimal.

8. Madison testified that he discussed with Mercer on several occasions during the months before the deal was made and with Dr. Damadian on June 15, 2005 that his deposit would be refundable if he did not find locations. In the conversation on June 15th, the parties agreed to the lower deposit per machine because Madison was going to purchase four machines. However, Madison said that Mercer assured him that the deposit was nevertheless fully refundable, that he had nothing to lose, and that by entering into the deal before the end of FONAR's fiscal year, he would help FONAR's finances look good.

9. On June 28, 2005, Madison signed the Terms of Sale subject to the terms set forth in his June 29, 2005 cover letter sending the $300,000 deposit and returning the signed Terms of Sale to FONAR. Madison claimed in his cover letter that he had not yet completed his feasability studies. It stated in part:

> Since we have not finalized our feasibility studies on locations, the subject deposit of $300,000 is placed with you subject to finding appropriate locations, etc. within one year. After 90 days if we do not find any location, we will request full refund of the deposit (at any time before 12 months). During such period we will earn interest on the deposit equal to the interest we are earning at John Hancock Funds (from which we drew the funds).

Ex. 2. The letter advised that the John Hancock Fund was paying 6% and more.

10. On June 29, 2005, Dr. Damadian signed the Terms of Sales that had been modified by Madison's addition of the following language: "Subject to the terms on cover letter-attached." The parties' agreement, therefore, consisted of the Terms of Sale and the contents of Madison's letter of June 29, 2005.

FINDINGS OF FACT AND CONCLUSIONS OF LAW
C-07-04211
4

11. The parties disagree as to what was intended by the language: "After 90 days if we do not find any location, we will request full refund of the deposit (at any time before 12 months)." *Id.* FONAR claims it meant that Madison was not entitled to a refund if he failed to request it within the twelve month period. Madison, on the other hand, submits the language was intended to provide that FONAR was to pay interest on his deposit from the date he requested a refund (at least 90 days after his deposit) to the date on which FONAR actually returned the deposit during the 12 month period. The language, according to Madison, did not require him to make a demand for the return of the deposit after 12 months because FONAR was obligated under FONAR's Terms of Sale to return the deposit if locations were not found within the 12 month period.

11. Madison did not do much to explore potential locations for the MRI equipment, apparently because he had no luck in obtaining a partner or co-investor. Whatever superficial feasibility studies he did caused him to question the profit potential of investment in the FONAR MRI machines. He had been given some expense and potential revenue figures by Mercer, but he does not appear to have ever seriously considered any particular site. He never submitted a proposed site to FONAR for its approval.

12. On or about July 18, 2006, Madison sent a letter to FONAR requesting a refund of the $300,000 deposit to enable him to secure locations for MRI systems in Turkey and Dubai. The parties dispute the extent of their communications before the date of this letter but FONAR eventually denied that Madison had a right to a refund because he had failed to ask for it within 12 months of his deposit with FONAR and because he failed to make a good faith effort to find locations for the MRI equipment.

## II. Conclusions of Law

1. **The Parties' Claims:** Madison asserts three claims: (1) breach of contract; (2) money had and received; and (3) promise without intent to perform. He seeks the return of his $300,000 deposit and punitive damages. FONAR, by its counterclaims, asserts claims for (1) breach of contract and (2) breach of the covenant of good faith and fair dealing. It seeks $450,000 according to its counterclaim which is the total amount of the additional deposits due under the Terms of Sale for the

FINDINGS OF FACT AND CONCLUSIONS OF LAW
C-07-04211
5

MRI systems. However, in its post-trial briefing it seeks only to retain the $300,000 deposit or, in the alternative, to recover $2,146,892, its alleged lost profits.

2. **The Parties' Agreement:** The parties entered into a written agreement on June 29, 2005, the terms of which were set forth in the Terms of Sale sent by FONAR to Madison on June 16, 2005 and Madison's cover letter returning the Terms of Sale to FONAR on June 28, 2005. The Terms of Sale with Madison's additions were accepted by Dr. Damadian on behalf of FONAR on June 29, 2005.

3. **Promise Without Intent to Perform:** The court granted a motion for judgment as a matter of law in favor of FONAR on plaintiff's claim that FONAR entered into the agreement with no intent to perform. "[I]n order to support a claim of fraud based upon the alleged failure to perform a promise, it must be shown that the promisor did not intend to perform at the time the promise was made." *Conrad v. Bank of America*, 45 Cal.App. 4th 133, 157 (1996) citing *Tenzer v. Superscope, Inc.*, 39 Cal. 3d 18, 30 (1985). No evidence was presented from which one could reasonably draw the inference that FONAR did not intend to fulfill its obligations under the contract at the time Dr. Damadian accepted it on behalf of FONAR on June 29, 2005. Something more than nonperformance is required to prove a defendant's intent not to perform. *See Magpali v. Farmers Group, Inc.*, 48 Cal.App. 4th 471, 481 (1996). The court's grant of the motion for judgment as a matter of law removed the only claim on which punitive damages could be sought so it removed punitive damages from the case.

4. **Breach of Contract:** Madison and FONAR each claim that the other breached the contract between them. Madison claims that FONAR breached by failing to return his deposit after no sites for MRI machines were located and presented to FONAR for approval. FONAR, on the other hand, asserts that Madison breached either the express terms of the contract or an implied covenant of good faith and fair dealing in the contract by failing to look for and present MRI sites to FONAR for approval. FONAR also contends that under the contract Madison, in addition to not presenting sites to FONAR for approval, had to make an affirmative request for a refund "at any time before 12 months." Exhibit 2. The breach of contract claims by FONAR will be discussed first, followed by a discussion of Madison's breach of contract and money had and received claims.

FINDINGS OF FACT AND CONCLUSIONS OF LAW
C-07-04211

6

5. **Alleged Breach by Madison of Obligation to Locate Sites for FONAR's Approval :** Madison claims that the provision of the contract stating that the sale "is contingent on the location of four (4) FONAR approved sites within a year" meant that if FONAR had not approved four sites within a year, whether because Madison did not submit any for approval or because FONAR found that submitted sites did not meet its requirements, Madison was to be refunded his deposit. The provision drafted by FONAR does not expressly impose any duty on Madison to make an effort to find locations. It appears to allow Madison to elect not to go forward if he did not find sites that he thought could be successful or if FONAR did not approve sites that he actually proposed. It also allowed FONAR to not go forward with the sale if it chose not to approve sites submitted by Madison.

    a. **Consideration of Parol Evidence:** FONAR submits that if parol evidence is considered, the language of the parties' agreement is reasonably susceptible and appropriately interpreted to only allow a refund if FONAR turned down sites submitted by Madison. *See Walter E. Heller Western, Inc. v. Tecrim Corp.*, 196 Cal.App. 3d 149, 682-83 (1987). In other words, the provision was only intended to protect Madison from disapprovals by FONAR. FONAR points to Madison's statements during negotiations that he would have no problem finding sites and that his concern was refundability of his deposit if FONAR did not approve the sites he wanted. FONAR also submits that Madison's statement in his June 29, 2005 cover letter about a feasability study was untrue.

    b. **Credibility of Witnesses:** Madison was not a credible witness in many respects. Nevertheless, the court does not find that the approved site contingency was as limited as FONAR contends. First, as plaintiff noted, the language of the parties' agreement places no obligation on him to search for sites or find sites for submittal to FONAR for approval. Second, Madison's statement in his June 28, 2005 cover letter about having not completed his feasability studies on locations, whether true or not, implied that he might not find sites satisfactory to him. Finally, until Madison put down an additional deposit, FONAR's Terms of Sale made clear that it would not commence production of a machine. This suggests that neither side looked at their agreement as much more than a good faith arrangement to explore the possibility of Madison's purchasing MRI

FINDINGS OF FACT AND CONCLUSIONS OF LAW
C-07-04211
7

systems from FONAR. The court does not find that Madison breached an express provision of the contract by failing to locate and present sites to FONAR for approval. The provision did not require Madison to make any particular search effort or preclude him from rejecting locations on a purely subjective basis.

      c. **Covenant of Good Faith and Fair Dealing:** FONAR, however, argues that if Madison did not breach an express provision of the agreement, he at least breached the covenant of good faith and fair dealing by not making more of an effort to find sites. The "implied covenant imposes upon each party the obligation to do everything that the contract presupposes they will do to accomplish its purpose." *Schoolcraft v. Ross*, 81 Cal.App.3d 75, 80 (1978). Whether Madison breached the implied covenant of good faith and fair dealing presents a close question. Madison had a good faith obligation to look for sites for a minimum of 90 days (during his purported feasability study) and for as much as twelve months, just as FONAR had a good faith obligation to approve appropriate sites if submitted. Madison did do some minimal looking and apparently tried to interest one or more doctors to partner with him and to place an MRI System in the doctor's office. He had some contact with real estate agents. However, Madison's effort to find locations was marginal. His testimony about the efforts he made to find locations was exaggerated. His claim that he found potential sites in Dubai or Turkey was not credible. However, since he did do some looking and the parties' agreement imposed no obligation on him to submit locations for approval or to undertake any particular efforts to find locations, the weight of the evidence does not justify a finding that Madison breached the covenant of good faith and fair dealing.

      **6. Alleged Breach by Madison for Failure to Request Refund Within 12 Months:** FONAR contends that Madison was required to ask for a refund within 12 months of the date he made his deposit. This contention is based upon the wording of Madison's cover letter of June 29, 2005 stating:

> Since we have not finalized our feasibility studies on locations, the subject deposit of $300,000 is placed with you subject to finding appropriate locations, etc. within one year. After 90 days if we do not find any location, we will request full refund of the deposit (at any time before 12 months). During such period we will earn interest on the deposit equal to the interest we are earning at John Hancock Funds (from which we drew the funds).

FINDINGS OF FACT AND CONCLUSIONS OF LAW
C-07-04211

8

Ex. 2.

At first blush, particularly if one reads this statement in isolation, it appears to provide for a refund if requested after 90 days and before 12 months and, therefore, implies that a request for a refund must be made and within 12 months. However, in interpreting a contract, the contract is to be considered as a whole and the parts are to be taken together. Cal. Civ. §§ 1641-2. The parties' agreement as a whole consisted of FONAR's Terms of Sale and Madison's cover letter returning FONAR's Terms of Sale. The Terms of Sale did not require a request for a refund but obligated FONAR to make the refund after 12 months if sites had not been approved. The only deadline set in the Terms of Sale was for approval of sites. It, therefore, is illogical that the parties would have thought that Madison, by his cover letter, was adding a requirement that he ask for a refund within 12 months in order to get one. What Madison appears to have intended to add by his cover letter was a requirement that FONAR pay interest on his deposit, starting from the date he notified FONAR after completion of his feasability study that he had not found any suitable location, to the date that FONAR returned the deposit. The reference to "at any time up before 12 months" referred to the period of time ending when FONAR was obligated to return the deposit. It was not intended to impose a requirement that Madison request a refund after 12 months as the parties' agreement already required FONAR to make the refund after 12 months. The provision is admittedly awkwardly worded. However, if FONAR's interpretation is accepted, Madison would have been required to make a request for a refund that FONAR was already obligated to make.

**7. Alleged Breach by Fonar for Failure to Return Deposit:** Madison's breach of contract claim is based upon the failure of FONAR to return Madison's deposit despite entitlement to it. The parties' agreement provided that

> This sale for Systems I, II, II and IV is contingent on the location of four (4) FONAR approved sites within a year of the date of the initial good faith deposit. If customer does not obtain approved site locations for each System the 5% good faith deposit for said System is to be returned by FONAR.

Ex. 1. As discussed above, this provision was not solely to protect Madison from a refusal by FONAR to approve site locations, but also was intended to protect Madison in case he did not find

FINDINGS OF FACT AND CONCLUSIONS OF LAW
C-07-04211
9

sites that he considered financially feasible. Since Madison did not find suitable locations within one year, he became entitled to the refund of his deposit.

**Interest on Deposit:** Madison's agreement with FONAR also provided that if after 90 days he notified FONAR that he was unable to find suitable locations, he was entitled to interest similar to that earned by him on his John Hancock account. Interest was to run from the date of notification to the date of payment. Although the agreement stated that Madison was receiving 6% on his Hancock account at the time the contract was signed, Madison failed to offer any evidence of the return he was receiving at the time he decided that he could not find suitable locations or at the time he first became entitled to the refund of his deposit. Therefore, although he has proved entitlement to the refund of his deposit, he is entitled to prejudgment interest only from the date of FONAR's breach, which was July 1, 2006. *See* Cal. Civ. Code § 3287. Madison never notified FONAR after 90 days and before 12 months that he was unable to find suitable locations.

**8. Madison's Claim for Money Had and Received:** Madison's claim for money had and received is not qualitatively different from his breach of contract claim. It is based upon the same underlying facts. Therefore, it covers nothing in addition to that covered by his breach of contract claim. *See Berryman v. Merit Property Management, Inc.*, 152 Cal.App. 4th 1544, 1559-60 (2007).

**9. Judgment:** Madison is entitled to judgment in his favor and against FONAR on his breach of contract and money had and received claims in the amount of $300,000 plus prejudgment interest from July 1, 2006. Madison is entitled to nothing on his promise without the intent to perform claim. FONAR is entitled to nothing on its claims for breach of contract and breach of the covenant of good faith and fair dealing.

DATED: 9/30/2010

*Ronald M Whyte*
RONALD M. WHYTE
United States District Judge

FINDINGS OF FACT AND CONCLUSIONS OF LAW
C-07-04211